UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CUIRONG KE,<br>Petitioner,<br>v.<br>JAMES JANEC[K]A, et al.,<br>Respondents. | Case No. 5:26-cv-04360-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On August 3, 2026, petitioner Cuirong Ke ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by the supporting Affidavit of Petitioner ("Petitioner's Decl.") (Docket No. 1-3), and two supporting exhibits (Docket Nos. 1-1 and 1-2).

/ / /

/ / /

/ / /

/ / /

/ / /

The Petition alleges the following claims for habeas relief: (1) Petitioner's detention violates her right to procedural due process under the Fifth Amendment; and (2) Petitioner's detention violates her right to substantive due process under the Fifth Amendment. (Docket No. 1 at 17).[1]

On August 11, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 4 at 2, 5), Respondents filed an Answer to the Petition ("Answer"). (Docket No. 8).

On August 20, 2026, Petitioner filed a Reply. (Docket No. 9).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a native and citizen of the People's Republic of China who fled her native country because she suffered persecution. (Petition at ¶¶ 1, 24). On January 8, 2022, Petitioner entered the United States lawfully in Los Angeles, California, on a valid B-1/B-2 nonimmigrant visa, after inspection and admission by an immigration officer. (Id. at ¶ 25). On an unknown date, Petitioner filed an application for asylum, which is based on the past persecution she suffered in China. (Id. at ¶ 26; Petitioner's Decl. at ¶ 3).

Following her application for asylum, United States Citizenship and Immigration Services ("USCIS") granted Petitioner employment authorization, and she obtained a Social Security number. (Petition at ¶ 27). Since then, Petitioner has lived openly at a known address, worked lawfully, established community ties, and has no criminal history. (Id. at ¶ 27; Petitioner's Decl. at ¶ 4).

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] The Background is based on the allegations in the Petition.

The Petition alleges that Petitioner's former attorney received the notice scheduling Petitioner's affirmative asylum interview, but never informed Petitioner about it, which resulted in Petitioner missing the interview. (Petition at ¶ 28; see id. at ¶ 5). Petitioner alleges that she did not elect to miss the interview, and she has never at any point abandoned her asylum claim. (Id. at ¶ 28 ).

Petitioner's case proceeded to the immigration court and on July 24, 2026, Petitioner's prior attorney – who had failed to inform her of her asylum interview – also failed to appear at the hearing to represent Petitioner and failed to secure her appearance, which caused the Immigration Judge to order Petitioner removed *in absentia*. (Petition at ¶ 29; Petitioner's Decl. at ¶ 5).

Thereafter, Petitioner retained new counsel and filed a timely appeal to the Board of Immigration Appeals, which is pending. (Petition at ¶ 30; Petitioner's Decl. at ¶ 5). Petitioner is also considering a motion to reopen and rescind the *in absentia* order based on the malpractice of her former attorney. (Id.).

Because Petitioner's appeal is pending, Petitioner asserts that her removal order is not administratively final, and its execution is stayed by operation of law during the pendency of the appeal. (Petition at ¶ 31).

Petitioner contends that at no time has any adjudicator made a custody determination concerning Petitioner. She has never had a bond hearing, no Immigration Judge has ever assessed whether she poses a danger to the community or a risk of flight, and Respondents have never asked an Immigration Judge to do so. (Petition at ¶ 32).

On July 27, 2026, three days after the *in absentia* order was entered, Petitioner traveled on a domestic flight where she did not depart the United States, did not travel internationally, and did not present at any border or port of entry seeking admission. (Petition at ¶ 33). Petitioner was, at all times, a lawfully admitted noncitizen present within the United States. (Id.; Petitioner's Decl. at ¶ 6).

Upon her arrival at Los Angeles International Airport ("LAX"), Immigration and Customs Enforcement ("ICE") officers arrested Petitioner, without a judicial warrant, without any prior notice, and without a hearing. (Petition at ¶ 34).

Because Petitioner's travel was purely domestic, she is not an "arriving alien" or an applicant for admission subject to 8 U.S.C. § 1225, is not subject to mandatory detention, and her detention is discretionary under 8 U.S.C. § 1226(a). (Petition at ¶ 35).

Petitioner's detention has taken a serious toll on her. (Petition at ¶ 38). Petitioner reports that she is sad and depressed, that she suffers from depression, and that she sleeps very poorly. (Id.; Petitioner's Decl. at ¶ 9).

At the time the Petition was filed, Petitioner was detained at the Adelanto ICE Processing Center in Adelanto, California. (Petition at ¶¶ 3, 14-15, 36).

**III.**

**LEGAL AUTHORITY**

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001)

(federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that

will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A. Petitioner is Entitled to Habeas Relief.

Petitioner claims that her arrest and detention on July 27, 2026, without any pre-deprivation notice or hearing, constituted a violation of due process. (See Petition at 10, 17). Specifically, Petitioner alleges that she has lived openly in the United States since she lawfully arrived in 2022, that she has pursued lawful immigration status pursuant to the governing laws and under the instruction of the government seeking to adjust her immigration status, and that since her arrival and during the pendency of her application, the government has permitted her to remain free and at liberty while exercising authority over her application for asylum. (Id. at ¶¶ 1, 25-27). Petitioner argues that the government was well aware of her presence in the United States as a result of her application for immigration relief, but that the government elected not to seek her detention or to otherwise impede her liberty, thereby granting her a liberty interest. (Id. at ¶¶ 6, 44-47).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. The protection afforded by the Due Process

Clause runs to citizens and noncitizens alike. J.G.G., 604 U.S. at 673 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, Case No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief. Indeed, a number of federal courts in California have found a protectable liberty interest in nearly identical circumstances. See Tzoc v. LaRose, Case No. 26-cv-3965-GPC-VET, 2026 WL 2227161, at *2-3 (S.D. Cal., Aug. 3, 2026); Dai v. Janecha, Case No. 5:26-cv-03966-PD, 2026 WL 2164154, at *1-2 (C.D. Cal., July 24, 2026); E.E.O.H. v. Noem, Case No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4-5 (E.D. Cal. Mar. 26, 2026), report and recommendation adopted, 2026 WL 967670 (E.D. Cal. Apr. 9, 2026); Villanueva-Montanez v. Lyons, Case No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026); Kalkan v. Chestnut, Case No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); Kharitonova v. Albarran, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026).

/ / /

As demonstrated in the cases cited above, courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them. See also Gagik T. v. Chestnut, et al, Case No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal., June 25, 2026) (granting release to a noncitizen who entered the country on a visitor visa, applied for asylum, was granted employment authorization and remained out of custody for six years); Kharitonova, 2026 WL 531441 at *2 ("Although the Government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual who was initially detained.").

The Court finds the reasoning of these cases persuasive. Petitioner entered the United States lawfully, pursuant to a B-1/B-2 nonimmigrant visa, and thereafter proceeded through the established lawful process to apply to the government for asylum. (Petition at ¶¶ 26, 28-29). The government authorized Petitioner to obtain employment and issued her a social security number. (Id. at ¶ 27). Petitioner has since lived openly in the community, at a known address, engaging in lawful employment and establishing a life in her community, with no violations of the law. (Id.). Thus, Respondents have had full knowledge of Petitioner's identity, immigration status and location during the pendency of her immigration application, or since January 2022. With this knowledge, the government has continuously elected not to detain Petitioner while exercising authority over her legal proceedings, all the while permitting her to remain free and at liberty while her application was pending.

Considering the arc of the government's sustained conduct towards Petitioner, the Court finds that Petitioner developed a substantial liberty interest in continued release.

/ / /

In light of this protected liberty interest, the Court turns to consider what process she is owed before the government may take that liberty interest away. Petitioner claims that due process was required before she was taken into custody. (Petition at ¶ 41). She thus argues that the appropriate habeas remedy is for her to be released back to the community. (Id. at ¶ 38, 61-65). The Court agrees.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three factors set forth in Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As discussed below, the Court finds that each of the three Mathews factors supports Petitioner's constitutional right to process before she was re-detained.

With regard to the first factor, as discussed above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in the community and pursuing her application for immigration relief. See Ortega, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that the petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second Mathews factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide her with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). And where a petitioner has not received a hearing or other process prior to the revocation of her liberty, "the risk of an erroneous deprivation [of liberty] is high." Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Finally, Respondents have not articulated any countervailing government interest—the third Mathews factor—that supports providing this process only after Petitioner has been detained. Due process "usually" requires a hearing before the State deprives a person of liberty or property. Zinermon, 494 U.S. at, 127. Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. Id. at 128. But neither of those exceptions appears to be applicable to the instant circumstances. Respondents have not argued that Petitioner was an imminent risk of flight or that some other exigency required her immediate arrest and detention arrived at LAX on July 27, 2026.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." Ortega, 415 F. Supp. 3d at 970; see also Morrissey, 408 U.S. at 483 (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the Mathews factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

With respect to the appropriate remedy for such a due process violation, many courts considering this issue have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner "will have already

suffered the harm" that such petitions raise—her potentially erroneous detention. See e.g., Hasratyan v. Bondi, Case No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); Saballos Rosales v. Noem, Case No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing Hasratyan); Charan S. v. Warden, CA City, Case No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"); Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); see also Riveros-Sanchez v. City of Easton, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position she would have been absent the due process violation—that is, she should be released from custody on the conditions that were initially imposed. See e.g., E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); Jasbin v. Warden, Case No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that the petitioner was only entitled to bond hearing as a Maldonado Bautista class member); Prior v. Chestnut, Case No. 1:25-cv-01131-JLTEPG-HC, 2026 WL 309560, at *9

(E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

## V.

## ORDER

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) that a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Cuirong Ke (A# 241-919-329) from custody, subject to the same conditions (if any) that she was subject to at the time she was arrested and re-detained, (b) ordering Respondents to return all property confiscated from Petitioner during her arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: August 25, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE